1

2

3

4

5

6

7

8                     **UNITED STATES DISTRICT COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   MARY GONZALES-SMITH,           )      No. CV 09-5198-CW
                                     )
13              Plaintiff,           )      DECISION AND ORDER
                                     )      OF UNITED STATES
14         v.                        )      MAGISTRATE JUDGE
                                     )
15   HERITAGE RANCH OWNERS           )
     ASSOCIATION, et al.,            )
16                                   )
                Defendants.          )
17   _____)

18

19       The parties to this action have consented to the jurisdiction of

20   the magistrate judge.  For reasons stated below, Defendants' motion

21   for summary judgment is granted in part and denied in part.

22                   **I.  PROCEEDINGS AND BACKGROUND**

23       Plaintiff Mary Gonzales-Smith, with assistance of counsel and

24   with payment of the filing fee, filed her initial Complaint in this

25   action on July 16, 2009.  [Docket no. 1.]  Defendants moved to

26   dismiss, and the Complaint was dismissed with leave to amend in the

27   Memorandum and Order filed January 26, 2010.  [Docket no. 30.]

28       Plaintiff's First Amended Complaint ("FAC") was filed on February

                                     1

25, 2010.  [Docket no. 32.]  The FAC identifies three named
Defendants: Heritage Ranch Owners Association ("HROA"); Frank Barrera
("Barrera"), a security officer employed by HROA; and Linda Richey
("Richey"), general manager of HROA.  [FAC ¶¶ 6, 8, 9.]  Plaintiff
alleges that Defendants violated her federal civil rights under 42
U.S.C. §§ 1981, 1982, and 1983 by harassing and racially
discriminating against her and her family while they lived at Heritage
Ranch.  [FAC ¶¶ 22-123.]  Plaintiff also alleges that Defendants'
actions constituted intentional infliction of emotional distress under
state tort law.  [FAC ¶¶ 124-29.]  Plaintiff asserts federal question
jurisdiction over her civil rights claims and supplemental
jurisdiction over her state law claims.  [FAC ¶¶ 2-4.]

On March 12, 2010, Defendant HROA moved to dismiss the FAC and
Defendants Barrera and Richey joined in that motion.  [Docket nos. 33,
34, 35.]  Plaintiff opposed the motion, and Defendants replied.
[Docket nos. 36, 37, 38.]

On July 9, 2010, Defendant HROA filed a motion for summary
judgment, followed by supporting documents.  [Docket nos. 40-47.]
Defendants Barrera and Richey joined the motion on July 12, 2010.
[Docket no. 48.]  Plaintiff filed opposition and supporting documents
on July 27, 2010, and July 29, 2010.  [Docket nos. 52, 53, 56, 57.]
In a minute order filed August 4, 2010, the court denied the motion to
dismiss, resolved a dispute about late filing of the opposition to the
summary judgment motion, and ordered additional briefing.  [Docket no.
60.]  Defendants filed answers on August 18, 2010, and a reply and a
joinder on August 30, 2010.  [Docket nos. 63-67.]  On October 15,
2010, the court heard oral argument and took the summary judgment
motion under submission.  [Docket no. 70.]

2

## II.  **THE SUMMARY JUDGMENT STANDARD**

"A party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

A fact is "material" only if it might affect the outcome of the suit under governing law.  <u>Anderson</u>, 477 U.S. at 248.  A dispute is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  <u>Anderson</u>, 477 U.S. at 248-49.  In determining whether a triable issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party.  <u>Fairbank v. Wunderman Cato Johnson</u>, 212 F.3d 528, 531 (9th Cir. 2000).  However, summary judgment cannot be avoided by relying solely on conclusory allegations unsupported by factual data.  <u>Arpin v. Santa Clara Valley Transportation Agency</u>, 261 F.3d 912, 922 (9th Cir. 2001).  More than a "metaphysical" doubt is required to establish a genuine issue of material fact.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, . . . ."  Fed. R. Civ. P. 56(c)(1).  "An affidavit or declaration used to support or oppose a motion must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  A verified complaint meets the affidavit requirement to the extent that it is based on personal knowledge.  <u>McElyea v. Babbitt</u>, 833 F.2d 196, 198 n.1 (9th Cir. 1987).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the could may [<u>inter alia</u>] . . . grant summary judgment if the motion and supporting materials -- including the fact considered undisputed -- show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e); <u>see also</u> <u>Rand v. Rowland</u>, 154 F.3d 952, 960 (9th Cir. 1998)(en banc); <u>Klingele v. Eikenberry</u>, 849 F.2d 409, 411-12 (9th Cir. 1988).

## III.  <u>PLAINTIFF'S ALLEGATIONS AND CLAIMS</u>

### A.  <u>PLAINTIFF'S ALLEGATIONS IN THE FAC</u>

Plaintiff makes the following allegations in her FAC.  Around September of 2004, Plaintiff, who is African-American, leased a house at 4309 Skylink Lane in Heritage Ranch, in Paso Robles, California. After Plaintiff moved into the house with her husband, Derron Smith, and her four children, Defendants committed a series of acts of racial harassment and discrimination designed to force Plaintiff and her family ("the Smiths") out of Heritage Ranch.  [FAC ¶¶ 22-85.]

While the family resided at 4309 Skylink Lane, they were harassed in the following ways:

a)   Plaintiff and her family were called racially derogatory names;

b)   security officers harassed Plaintiff's guests;

c)   security officers parked near Plaintiff's house and would watch the residence for long periods of time;

d)    security officers shone their flashlights into Plaintiff's
      windows at night;

e)    people who defended Plaintiff were also harassed;

f)    Defendants Richey and Barrera falsely told other residents that
      the Smiths were dealing drugs from their house or were addicted
      to drugs;

g)    Plaintiff's son's car was vandalized;

h)    unspecified individuals engaged in derogatory discussions about
      the Smiths at nearly every association board meeting;

I)    Defendants Richey and Barrera condoned and promoted hostile
      attitudes toward the Smiths;

j)    security officers locked one of Plaintiff's dogs in the security
      office so that Plaintiff had to retrieve the pet and pay a fine;

k)    security officers strictly enforced regulations against the
      Smiths while white families with the same violations were ignored
      or only given warnings;

l)    Defendant Richey told Plaintiff that "85% of the people at
      Heritage Ranch did not want her there."

[FAC ¶¶ 31-53.]

     In August 2006, the Smiths moved to a different house in Heritage
Ranch.  [FAC ¶ 54.]  After the relocation, the harassment increased
significantly.  [FAC ¶ 55.]  During the period between August 2006 and
August 2007 the following incidents occurred:

a)    Defendant Barrera told unspecified people that the Smiths did not
      belong in Heritage Ranch and that he would "ticket them off the
      ranch";

b)    security officers told Plaintiff "she did not belong in Heritage
      Ranch and should go back to Compton";

1   c)    Defendant Barrera and other security officers issued numerous

2           expensive and unjustified citations against the Smiths;

3   d)    security officers who refused to harass Plaintiff were

4           terminated;

5   e)    in January 2007 more than twenty residents signed a petition to

6           stop the harassment of Plaintiff; and

7   f)    many people who tried to support Plaintiff were harassed by

8           security officers.

9   [FAC ¶¶ 54-65.]

10      During the time between January 2007, when residents signed the

11   petition, and August 1, 2007, when Plaintiff moved out of Heritage

12   Ranch, the following incidents occurred:

13   a)    when Plaintiff's ten-year-old son was "beaten by other children,"

14           no investigation took place nor were any fines issued;

15   b)    when Plaintiff's son had rocks thrown at him, no investigation

16           took place nor were any fines issued;

17   c)    Plaintiff's family's boat was severely vandalized;

18   d)    Defendant Barrera told a security guard to make sure Plaintiff's

19           boat was ticketed every day;

20   e)    unspecified individuals punctured a hole in the oil pan of

21           Plaintiff's vehicle;

22   f)    unspecified individuals removed the wheel lugs from a small golf

23           cart;

24   g)    one of Plaintiff's dogs was shot with a pellet gun; and

25   h)    after moving out of Heritage Ranch Plaintiff returned for her

26           freezer and, on seeing Plaintiff, a security guard said "I

27           thought we ran you out."

28   [FAC ¶¶ 66-81.]

6

1   After Plaintiff's landlord assumed responsibility for the
2   citations and fines issued to the Smiths, the landlord made an
3   agreement with HROA's board under which the citations and fines would
4   be removed if the landlord procured Plaintiff's departure.  [FAC ¶
5   89.]  On or about August 1, 2007, when Plaintiff's lease expired,
6   Plaintiff's landlord did not renew and Plaintiff moved out.  [FAC ¶
7   88.]  After Plaintiff moved out, "none of the fines were ever paid,
8   and the citations were removed from the books."  [FAC ¶ 92.]

9       **B.   PLAINTIFF'S CLAIMS FOR RELIEF**

10      Plaintiff contends that Defendants violated her federal civil
11  rights under 42 U.S.C. § 1981 (by interfering with her right to make
12  and enforce contracts), under 42 U.S.C. § 1982 (by interfering with
13  her right to lease property) [FAC ¶ 114], and under 42 U.S.C. § 1983
14  (by violating her rights to be free from racial profiling and
15  harassment and to enjoy equal protection).  [FAC ¶¶ 96-123.]
16  Plaintiff also claims that Defendants' actions constituted intentional
17  infliction of emotional distress under California tort law.  [FAC ¶¶
18  124-28.]  Plaintiff seeks special damages, reimbursement of rent paid,
19  medical expenses, compensatory damages for pain and suffering,
20  punitive damages, and costs and attorney fees.  [FAC p. 20.]

21          **IV.   THE SUMMARY JUDGMENT MOTION**

22      **A.   DEFENDANTS' GROUNDS FOR SUMMARY JUDGMENT**

23      Defendants contend that all of Plaintiff's claims are time-
24  barred; that she has not shown intentional racial discrimination as
25  required under 42 U.S.C. §§ 1981 and 1982; that she has not shown
26  action under color of state law as required for her claim under 42
27  U.S.C. § 1983; and that she has not factually supported her claim for
28  intentional infliction of emotional distress.  [See Defendant HROA's

7

Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("D. Mem."), docket no. 46.]  Plaintiff has filed an opposing memorandum ("P. Mem.")[docket no. 52], to which Defendants have filed a (second) reply memorandum ("D. Rep.")[docket no. 65].

**B.   EVIDENCE USED IN REVIEWING THE SUMMARY JUDGMENT MOTION**

The following documents contain evidence admissible in reviewing Defendants' motion for summary judgment: Declaration of Frank Barrera ("Barrera Decl.") and exhibits [docket no. 42]; Declaration of William Ronald Garner ("Garner Decl.") [docket no. 43]; Declaration of Linda Richey ("Richey Decl.") and exhibits [docket no. 44]; Depositions of Mary Gonzales Smith ("MGS Depo.") and Robert Bernier ("Bernier Depo.") attached as exhibits to the Declaration of Scott R. Baker [docket no. 45]; and other depositions and declarations in Plaintiff's Exhibit Package ("P. Ex.") [docket no. 56].[1]

This evidence is referenced by Defendant HROA in the Statement of Uncontroverted Facts ("D. SUF")[docket no. 47]; by Plaintiff in her Statement of Genuine Issues ("P. SGI")[docket no. 53] and Amended Statement of Genuine Issues ("P. ASGI")[docket no. 57]; by Defendant HROA in the objections to Plaintiff's amended statement ("D. Obj.") [docket no. 65-1]; and by the parties in their briefs, as cited below.

**V.   DISCUSSION**

**A.   COLOR OF LAW, STATE ACTION, AND SECTION 1983**

Plaintiff asserts a federal civil rights claims under 42 U.S.C. § 1983.  The elements of a § 1983 claim are that a defendant, acting under color of state law, deprived the plaintiff of a right under the

---

[1] Plaintiff did not verify the FAC by signing it under penalty of perjury.  Therefore, her allegations in the FAC are not admissible evidence on summary judgment.  McElyea, 833 F.2d at 198.

federal constitution or laws.  See Miranda v. Clark County, 279 F.3d 1102, 1106 (9th Cir. 2002)(citing West v. Atkins, 487 U.S. 42, 48-49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)).  Unlike 42 U.S.C. §§ 1981 and 1982 (discussed below), 42 U.S.C. § 1983 does not allow claims for discrimination by a private party not acting under color of state law. See Price v. Hawaii, 939 F.2d 702, 207-08 (9th Cir. 1991); see also Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003)(citing Price).

Here the defendants are all private parties -- Defendant HROA, a private homeowners' association, and two of its employees, Defendants Barrera and Richey.  Although a private party is not normally acting "under color of state law," a private parties' action may be "under color of state law," for purposes of § 1983, if there is "significant" state involvement in the action.  Franklin v. Fox, 312 F.3d 423, 444 (9th Cir. 2002)(citing Johnson v. Knowles, 113 F.3d 1114, 1118 (9th Cir. 1997).  Section 1983's "under color of state law" requirement is technically distinct from the Fourteenth Amendment's state-action requirement, but the courts' analyses of the two requirements are comparable.  Johnson, 113 F.3d at 1118 (citing Collins v. Womancare, 878 F.2d 1145, 1148 (9th Cir. 1989)).

"The Supreme Court has articulated four distinct tests for determining when the actions of a private individual amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." Johnson, 113 F.3d at 1148-49.  Plaintiff does not contend, and the evidence does not indicate, that Defendants engaged in any joint action with the state, were subjected to compulsion by the state, or that there was any relationship between HROA and the state forming a

sufficient "nexus" such that the actions of HROA or its employees may fairly be treated as actions by the state.

The remaining possibility for state action is the public function test. The Supreme Court has found state action "in the exercise by a private entity of powers traditionally exclusively reserved to the State." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974). "'Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'" Kirtley v. Rainey, 326 F.3d 1088, 1093 (9th Cir. 2003) (quoting Lee v. Katz, 276 F.3d 550, 554–55 (9th Cir. 2002)). "The public function test is satisfied only on a showing that the function at issue is 'both traditionally and exclusively governmental.'" Kirtley, 326 F.3d at 1093 (quoting Lee, 273 F.3d at 555).

Plaintiff notes that, in California, Home Owners' Associations are authorized to establish their own rules and bylaws by the Davis-Sterling Act, Cal. Civil Code sections 1350 et seq. [Docket no. 52, Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Opposition ("P. Mem.") at 9-10.] Plaintiff contends that HROA "has the characteristics of a municipality" in that it "has assumed the authority to set equipment rules for vehicles, investigate crimes, impose punitive fines, and otherwise regulate . . ." [P. Mem. at 10.] In particular, Plaintiff asserts, in some detail, that HROA's security force operates like local law enforcement, citing both homeowners and the public for the type of violations "usually handled by local law enforcement," and that these citations can lead to substantial fines that can only be appealed within HROA's own

10

structure.  [P. Mem. at 10-12.]

Here, Plaintiff has, arguably, identified certain regulatory functions performed by HROA that are traditionally exercised by municipalities, but she has not identified any exclusively governmental functions that have been delegated to the HROA by state law or that are exercised by the HROA.  In particular, although HROA's security guards (like security guards in other private venues such as shopping malls or country clubs) exercise some functions comparable to those exercised by municipal police officers, Plaintiff does not allege, and the evidence does not suggest, that HROA and its security guards have taken over all municipal policing functions.

In Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978), the Supreme Court emphasized that instances in which the public-function doctrine applied "have in common the feature of exclusivity" involving the delegation to a private entity of "an exclusive prerogative of the sovereign."  Flagg Bros., 436 U.S. at 159-60.  Thus, for example, the Supreme Court, applying a public-function rationale, found that a "company town" owned by a private corporation functioned as did any other municipality, and was, therefore, subject to First Amendment guarantees.  See Marsh v. Alabama, 326 U.S. 501, 507, 66 S. Ct. 276, 90 L. Ed. 265 (1946); see also Flagg Bros., 436 U.S. at 159 (noting that in Marsh the corporate-owned company town had "taken on all the attributes of a town" (citing Marsh, 326 U.S. at 502-03)).  On the other hand, the Supreme Court found that a privately owned shopping mall, even if it contained public space subject to state constitutional limitations, was not subject to First Amendment guarantees.  See Prune Yard Shopping Center v. Robins, 447 U.S. 74, 80-81, 100 S. Ct. 2035, 64 L. Ed. 2d 741

11

1   (1980).

2        In the instant case, the evidence before this court on summary

3   judgment indicates that HROA is like the shopping center in <u>Prune Yard</u>

4   rather than the company town in <u>Marsh</u>, and that HROA does not pass the

5   public-function test for state action under the Fourteenth Amendment

6   or for action under color of law as an element of a claim under 42

7   U.S.C. § 1983.  HROA is a private association.  Defendants Barrera and

8   Richey are employees of that private association, and there is no

9   other basis for finding that they acted under color of state law.

10       Accordingly, Plaintiff's § 1983 claims against all Defendants

11  fail as a matter of law, and Defendants are entitled to summary

12  judgment in their favor on Plaintiff's § 1983 claims.

13       **B.    INTENTIONAL DISCRIMINATION AND SECTIONS 1981 AND 1982**

14       Plaintiff also pleads federal civil rights claims under 42 U.S.C.

15  §§ 1981 and 1982.

16       As amended in 1991, § 1981 now provides as follows:

17            (a) [Statement of equal rights]

18       All persons within the jurisdiction of the United

19       States shall have the same right in every State and

20       Territory to make and enforce contracts, to sue, be parties,

21       give evidence, and to the full and equal benefit of all laws

22       and proceedings for the security of persons and property as

23       is enjoyed by white citizens, and shall be subject to like

24       punishment, pains, penalties, taxes, licenses, and exactions

25       of every kind, and to no other.

26            (b) ["Make and enforce contracts" defined]

27       For purposes of this section, the term "make and

28       enforce contracts" includes the making, performance,

                                   12

1  modification, and termination of contracts, and the
2  enjoyment of all benefits, privileges, terms, and conditions
3  of the contractual relationship.

4     (c) [Protection against impairment]

5     The rights protected by this section are protected
6  against impairment by nongovernmental discrimination and
7  impairment under color of State law.

8  42 U.S.C. § 1981.[2]

9  Section 1982 provides as follows:

10     All citizens of the United States shall have the same
11  right, in every State and Territory, as is enjoyed by white
12  citizens thereof to inherit, purchase, lease, sell, hold,
13  and convey real and personal property.

14  42 U.S.C. § 1982.

15  Unlike § 1983, §§ 1981 and 1982 cover racial discrimination by
16  private actors. See Runyon v. McCrary, 427 U.S. 160, 168, 96 S. Ct.
17  1586, 49 L. Ed. 2d (1976); Doe v. Kamehameha Schools/Bernice Pauahi
18  Bishop Estate, 470 F.3d 827, 835-37 (9th Cir. 2006)(en banc).   To
19  prove racial discrimination under §§ 1981 and 1982, a plaintiff must
20  show that a defendant acted with an intent to discriminate on the
21  basis of race. General Building Contractors Ass'n v. Pennsylvania,
22  458 U.S. 375, 391, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982)(§ 1981);
23  Shaare Tefile Congregation v. Cobb, 481 U.S. 615, 617, 107 S. Ct.
24  2019, 95 L. Ed. 2d 594 (1987)(§ 1982); see also Evans v. McKay, 869

---

27     [2]  The text now codified as § 1981(a) was the full text of § 1981
   before 1991.  This was recodified as subsection (a) and subsections
28  (b-c) were added in 1991.  See Jones v. R.R. Donnelley & Sons Co., 541
   U.S. 369, 372, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004).

F.2d 1341, 1344 (9th Cir. 1989)(§ 1981).  Under §§ 1981 and 1982, the right to lease is also protected against racial discrimination by third parties.  See Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 236-37, 90 S. Ct. 400, 24 L. Ed. 2d 386 (1969)(§ 1982 bars racial discrimination by private park open to and paid for by neighborhood residents which refused to extend lessor's membership to black lessee); Tillman v. Wheaton-Haven Recreation Ass'n, Inc., 410 U.S. 431, 440, 93 S. Ct. 1090, 35 L. Ed. 2d 403 (1973)(third-party liability extends to § 1981 claim as with § 1982 claim in Sullivan); Inland Mediation Bd. v. City of Pomona, 158 F. Supp. 2d 1120, 1154 (C.D. Cal. 2001)(citing Sullivan and Tillman, inter alia, on third-party liability).[3]

A three-step analysis applies to such claims: first, a plaintiff must establish a prima facie case of racial discrimination; then, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged action; then, the burden shifts back to the plaintiff to show that the reason offered was a pretext for racial discrimination.  Doe v. Kamehameha Schools, 470 F.3d at 837-38.  Here, Plaintiff claims that Defendants intentionally discriminated against her because of her race.  [FAC ¶¶ 19-123.]  Defendants contend, on summary judgment, that Plaintiff has not met the first step, above, by providing any admissible evidence of intentional racial discrimination by Defendants.  [D. Mem. at 15-18.]

//

//

---

[3]  "The right to 'lease' is protected by § 1982 against the actions of third parties, as well as against the actions of the immediate lessor."  Sullivan, 396 U.S. at 237.

1          **1.  <u>Evidence of Racial Animus</u>**

2          Plaintiff alleges that the Defendants' racial animus against her

3   was shown by the use of racial epithets, <u>e.g.</u>, by Defendant Barrera on

4   various occasions, and by various individuals at HROA board meetings.

5   [<u>See</u>, <u>e.g.</u>, FAC ¶¶ 34, 43, 56.]  Defendants contend that Plaintiff's

6   evidence for racially motivated discrimination by Defendants is

7   inadmissible, and consists largely of hearsay.  [D. Mem. at 9-10.]  On

8   their part, Defendants offer testimony by Defendants Barrera and

9   Richey themselves, as well as evidence from other witnesses, to the

10  effect that Defendants never expressed racial animus toward Plaintiff.

11  [D. SUF ¶¶ 39-48.][4]

12         With respect to Defendant Barrera, Defendants' contentions are

13  not persuasive.  At her deposition, Plaintiff described a face to face

14  encounter with Defendant Barrera during which, according to Plaintiff,

15  Defendant Barrera said to her, <u>inter alia</u>, "You fucking niggers don't

16  belong here.  You need to go back to Compton.  I will ticket you off

17  this ranch."  [MGS Depo. at 20.]  This is admissible evidence of

18  racial animus on the part of Defendant Barrera.  Although Defendant

19  Barrera denies using such language, there is here a genuine dispute on

20  an issue of material fact, and Plaintiff accordingly has supported a

21  triable claim of racial discrimination under 42 U.S.C. §§ 1981 and

22  1982 against Defendant Barrera.  Furthermore, although Plaintiff has

23  not provided admissible evidence directly showing racial animus on the

24  part of HROA board members, Defendants have made no argument that HROA

25

26  _____

27         [4]  For example, Plaintiff testified, in her deposition, that a
    witness, Bob Bernier, told her about racially derogatory language used
    about her at HROA board meetings, but Bernier, in his own deposition,
28  denied remembering any such language.  [D. SUF ¶¶ 45-48.]

should not be liable for intentional discrimination by Defendant

Barrera as its employee and agent.  [See FAC ¶¶ 8, 11.][5]

On the other hand, Plaintiff has not provided admissible evidence of racial animus on the part of Defendant Richey.  Plaintiff's direct evidence shows, at most, Richey's insensitivity to Plaintiff's health issues, and, perhaps, Richey's bias against Plaintiff based on an assumption that Plaintiff was using drugs, but does not show racial discrimination as with Barrera.  [See MGS Depo. at 108-113.] Plaintiff's indirect evidence -- of what other witnesses told her Richey said -- is contradicted by direct evidence of Richey herself and those other witnesses.  [D. SUF ¶¶ 39-40.]  Accordingly, Plaintiff has not supported her claim of racial discrimination, under §§ 1981 and 1982, against Defendant Richey, by identifying a genuine dispute on an issue of material fact.

## 2. Timeliness of Claims under §§ 1981 and 1982

Defendants also contend that all of Plaintiff's claims are time-barred.  Federal civil rights statutes (such as 42 U.S.C. §§ 1981, 1982, and 1983), which do not have their own statutes of limitations, generally borrow state statutes for personal injury actions.  See Wallace v. Kato, 549 U.S. 384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)(§ 1983 claims); Goodman v. Lukens Steel Co., 482 U.S. 656, 660, 107 S. Ct. 2617, 96 L. Ed. 2d 572 (1987)(§ 1981 claims); Johnson v.

---

[5]   See, e.g., Bonner v. Lewis, 857 F.3d 559, 566-76 (9th Cir. 1988)(doctrine of respondeat superior applied to § 1981 claim); Doe ex rel. Doe v. State of Hawaii Dept. of Educ., 251 F. Supp. 2d. 998, 1012 (D. Hawaii, 2004)(Bonner is established Ninth Circuit precedent re § 1981 and respondeat superior); Chew v. Hybl, No. C 96-03459-CW, 1997 WL 33644581, at *14 (N.D. Cal. Dec. 9, 1997)(Ninth Circuit applied respondeat superior to § 1982 claim in Phiffer v. Proud Parrot Motor Hotel, Inc., 648 F.2d 548, 552 (9th Cir. 1980)).

California, 207 F.3d 650, 653 n.2 (9th Cir. 2000)(§ 1981 claims,

etc.).  In California, effective January 1, 2003, the applicable

statute of limitations is two years.  See Canatella v. Van De Kamp,

486 F.3d 1128, 1132-33 (9th Cir. 2007).  In such civil rights cases,

federal courts also generally borrow state law tolling provisions.

See Wallace, 549 U.S. at 394 (§ 1983 claims); Johnson, 207 F.3d at 653

(§ 1981 claims).

    The accrual date of a federal civil rights claim, however, is a

question of federal law not settled by reference to state law.

Wallace, 549 U.S. at 388.  Generally, a claim accrues "when the

plaintiff has 'a complete and present cause of action'" that is, when

"the plaintiff can file suit and obtain relief."  Id. (quoting Bay

Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of

Cal., 522 U.S. 192, 201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997)(in

turn, citing and quoting Rawlings v. Ray, 312 U.S. 96, 98, 61 S. Ct.

473, 85 L. Ed. 605 (1941))).

    As noted above, the present action was opened on July 16, 2009,

when Plaintiff's initial Complaint was filed.  A date two years

earlier would be on or about July 16, 2007.  All of Plaintiff's

specific allegations of acts of harassment or discrimination by

Defendants fall on dates before July 16, 2007.  The evidence submitted

on summary judgment confirms this.[6]  Before July 16, 2007, Plaintiff

had brought her complaints about Defendant Barrera to Defendant

Richey, had met with an attorney, and had made an administrative

complaint to the Department of Housing and Urban Development ("HUD").

[D. SUF ¶¶ 18-20, 23-25, 31-32.]  Thus, it is evident that, prior to

_____

    [6] For example, Plaintiff did not receive any citations after
July 16, 2007.  [D. SUF ¶ 55.]

17

July 16, 2007, Plaintiff had a complete and present cause of action on her present claims, that she could have filed suit on those claims, and that, in other words, her present claims had accrued before that date.  Therefore, if a two-year statute of limitations applies, all of Plaintiff's claims would be time-barred, unless subject to tolling.[7]

However, there is a "catch-all" four-year federal statute of limitations for "a civil action arising under an Act of Congress enacted after" December 1, 1990, which does not have its own statute of limitations.  See 28 U.S.C. § 1658; Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004).  As noted above, before 1991 the statute now codified as 42 U.S.C. § 1981 consisted only of the text of present § 1981(a).  In Patterson v. McLean Credit Union, 491 U.S. 164, 177-78, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989), the Supreme Court strictly interpreted the pre-1991 text as limited to racial discrimination in the literal making and enforcing of contracts, and not to racial harassment occurring after the formation of the contract.  Patterson, 491 U.S. at 177-78.

In 1991, § 1981 was amended by the addition of the text of present sub-sections (b) and (c), and by division into sub-sections.

---

[7]  In contending that her claims are not time-barred, Plaintiff relies, in part, on the continuing violation doctrine.  "The continuing violation doctrine allows courts to consider conduct that would ordinarily be time barred when the untimely incidents represent an ongoing unlawful practice."  Inland Mediation Bd., 158 F. Supp. 2d at 1147 (citing Morgan v. National Railroad Passenger Corp., 232 F.3d 1008 (9th Cir.2000)).  "The doctrine applies when the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period."  Id.  Here, however, the initial question is whether any of the alleged acts of discrimination occurred within the limitations period, not whether earlier acts are sufficiently related to later acts.  On the present record, all of Plaintiff's alleged acts of discrimination occurred before July 16, 2007.

<u>Jones</u>, 541 U.S. at 372.  This amendment made clear that the statutory term "make and enforce contracts" as used in § 1981 included not only to making, performing, modifying, and terminating contracts, but also "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

In <u>Jones</u>, the Supreme Court found "that a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990 -- and therefore is governed by § 1658's four-year statute of limitations -- if the plaintiff's claim against the defendant was made possible by a post-1990 enactment."  <u>Jones</u>, 541 U.S. at 382 (<u>quoting</u> 28 U.S.C. § 1658).  The claims of the plaintiff in <u>Jones</u> (involving work environment, wrongful termination, and failure to transfer) were not actionable, prior to 1991, under the interpretation of § 1981 in <u>Patterson</u>, but were actionable under the 1991 amendments; therefore these claims "arose under" the 1991 amendments to § 1981, and were subject to the four-year statute of limitations.  <u>Id.</u>; <u>Johnson v. Lucent Technologies Inc.</u>, 653 F.3d 1000, 1005-08 (2011).

Most of the case law applying <u>Jones</u> to determine the statute of limitations applicable to § 1981 claims has involved employment contracts, but there is no evident reason to assume that either the strict interpretation of the application of § 1981 in <u>Patterson</u>, or its broadening in the amended statute as recognized in <u>Jones</u>, applies only to employment contracts.  In the present case, Plaintiff's contract was with her lessor, and her § 1981 claim is premised on alleged third-party racial discrimination by Defendants, after the formation of the contract, that interfered with her "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  On this interpretation,

19

Plaintiff's § 1981 claim, whether or not it might have been actionable pre-Patterson, would not have been actionable under Patterson, would have (again) become actionable under the statute as amended in 1991, and is entitled to the four-year statute of limitations under 28 U.S.C. § 1658, which makes her § 1981 claim against Defendants Barrera and HROA timely.[8]

On the other hand, § 1982 has not been amended post-1990, and § 1982 claims, brought in California, would be subject to the two-year statute of limitations for personal injury claims discussed above.[9] Therefore, Plaintiff's § 1982 would be time-barred unless subject to tolling.

Plaintiff contends that she is entitled to tolling based on her administrative complaint to HUD. [P. Mem. at 7-9.] On July 24, 2007, Plaintiff filed a housing discrimination complaint against Defendants Barrera and HROA under the Fair Housing Act. [Richey Decl. Ex. C.] The administrative proceeding was closed as of July 24, 2008, with a determination that reasonable cause did not exist to believe that a discriminatory housing practice had occurred. [Richey Decl. Exs. D-E.] The administrative proceeding appears to have been pending for approximately one year. If Plaintiff is entitled to tolling for a one-year period, only claims referring to events before approximately July 16, 2006 (instead of 2007) would be time-barred.

As noted above, federal civil rights claims which borrow state statutes of limitations also generally borrow state tolling

---

[8] In any event, Defendants have not offered any authority or analysis for finding that 28 U.S.C. § 1658 does not apply here.

[9] It appears, however, that Plaintiff's allegations of racial discrimination can support a claim under either § 1981 or § 1982.

provisions.  <u>See</u>, <u>e.g.</u>, <u>Johnson</u>, 207 F.3d at 653 (§ 1981 claims).
Under California law, equitable tolling may be available "when
defendants would not be prejudiced and plaintiffs, who had several
legal remedies, pursued one such remedy reasonably and in good faith."
<u>Downs v. Department of Water & Power</u>, 58 Cal. App. 4th 1093, 1100, 68
Cal. Rptr. 2d 590 (1997).  The <u>Downs</u> court described the test for such
equitable tolling as follows:

> Three factors determine whether the statute of
> limitations is equitably tolled in a particular case: (1)
> timely notice to defendants in filing the first claim; (2)
> lack of prejudice to defendants in gathering evidence to
> defend against the second claim; and (3) good faith and
> reasonable conduct by plaintiffs in filing the second
> claim. . . .  The timely notice requirement essentially
> means that the first claim must have been filed within the
> statutory period.  Furthermore[,] the filing of the first
> claim must alert the defendant in the second claim of the
> need to begin investigating the facts which form the basis
> for the second claim.  Generally this means that the
> defendant in the first claim is the same one being sued in
> the second. . . .  The second prerequisite essentially
> translates to a requirement that the facts of the two claims
> be identical or at least so similar that the defendant's
> investigation of the first claim will put him in a position
> to fairly defend the second. . . .  The third prerequisite
> of good faith and reasonable conduct on the part of the
> plaintiff is less clearly defined in the cases.  But in
> <u>Addison v. State of California</u>, . . . the [California]

21

1  Supreme Court did stress that the plaintiff filed his second

2  claim a short time after tolling ended.

3  Downs, 58 Cal. App. 4th at 1100 (citations and internal quotation

4  marks omitted); see also, e.g., McDonald v. Antelope Valley Community

5  College Dist., 45 Cal. 4th 88, 102 and n.2, 194 P. 3d 1026, 84 Cal.

6  Rptr. 3d 734 (2008)(quoting and applying this standard as given in

7  Downs); Fanucci v. Allstate Ins. Co., 638 F. Supp. 2d 1125, 1138-39

8  (N.D. Cal. 2009)(citing and following McDonald and Downs).

9  Here, it appears that (1) Plaintiff gave timely notice to

10  Defendants Barrera and HROA with the filing of her administrative

11  complaint with HUD, (2) the claims of racial discrimination in the HUD

12  complaint gave those Defendants notice of the factual allegations

13  underlying her claims under §§ 1981 and 1982 in the present, and (3)

14  Plaintiff acted in good faith by filing the present action within

15  approximately one year of the completion of the HUD administrative

16  proceeding. Accordingly, Plaintiff appears to be entitled to

17  equitable tolling, with respect to at least some of her § 1981 and

18  § 1982 racial discrimination claims against Defendants Barrera and

19  HROA. On the other hand, even if Plaintiff could support § 1981 or §

20  1982 claims against Defendant Richey, her HUD complaint did not

21  address those claims, and would not support equitable tolling as to

22  Defendant Richey. Accordingly, any such claims against Defendant

23  Richey would be time-barred.[10]

24

25  [10] Plaintiff also argues that she is entitled to statutory
   tolling for this period under the Fair Housing Act ("the Act") itself.

26  The Act authorizes both administrative complaints and civil actions,
   with a two-year statute of limitations and tolling during the pendency

27  of an administrative proceeding under the act. See 42 U.S.C. § 3613
   (a)(1)(A)-(B). Plaintiff contends that the statutory tolling

28  (continued...)

22

1       **3.    Conclusion**

2           Thus, Defendants' motion for summary judgment on Plaintiff's

3   claims under § 1981 and § 1982 should be granted as to Defendant

4   Richey (as untimely and on the substance of the claims), and denied as

5   to Defendants Barrera and HROA.

6       **C.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

7           Plaintiff also pleads a claim of intentional infliction of

8   emotional distress, under California tort law, against all three

9   defendants.  [FAC ¶¶ 124-28.]  Under California law, the elements of a

10  claim of intentional infliction of emotional distress are "(1) extreme

11  and outrageous conduct by the defendant with the intent to cause, or

12  reckless disregard for the probability of causing, emotional distress;

13  (2) suffering of severe or extreme emotional distress by the

14  plaintiff; and (3) the plaintiff's emotional distress is actually and

15  proximately the result of defendant's outrageous conduct."  Burke v.

16  County of Alameda, 352 Fed. App'x 216, 219 (9th Cir. 2009)(quoting

17  Myung Chang v. Lederman, 172 Cal. App. 4th 67, 86, 90 Cal. Rptr. 3d

18  758 (2009)(citations and internal quotation marks omitted)).  "Extreme

19

20          [10]  (...continued)
    provision should apply to any civil action brought with regard to
21  claims of housing discrimination (including Plaintiff's federal civil
    rights and state torts claims), and not just to claims under the Act
22  itself.  [P. Mem. at 6-7.]  Plaintiff notes that provisions of the Act
    setting the two-year statutory period and providing for tolling refer
23  to "a civil action," while the provisions immediately following refer
    to "a civil action under this subsection."  [Id.]  However, as noted
24  above, federal civil rights statutes that do not have their own
    statutes of limitations (such as §§ 1981 and 1982), either fall under
25  the federal four-year "catch-all" statute of limitations, or borrow
    state statutes of limitations and state tolling provisions.  Plaintiff
26  has cited no authority, and the court has found none, for disregarding
    this general rule, and applying the statute of limitations contained
27  in a different federal statute, for only those claims under §§ 1981
    and 1982 that involve discrimination in housing.
28

and outrageous conduct is conduct that is so extreme as to exceed all bounds of that usually tolerated in a civilized community." Burke, id. (quoting Myung Chang, id. (citations and internal quotation marks omitted)).

Defendants also contend that Plaintiff's claim for intentional infliction of emotional distress claim is time-barred. This state tort claim is also subject to a two-year statute of limitations. See Murray v. Oceanside Unified School Dist., 79 Cal. App. 4th 1338, 1363, 95 Cal. Rptr. 2d 28 (2000)(one-year statute of limitations for personal injury under former Cal. Code of Civ. Proc. § 340); Cal. Code of Civ. Proc. § 335.1 (amended to two-year statute of limitations effective 2003). Under California law, "[a] cause of action for the intentional infliction of emotional harm arises when the harm is inflicted." Eisenberg v. Insurance Co. of North America, 815 F.2d 1285, 1292 (9th Cir. 1987)(citing Murphy v. Allstate Insurance Co., 83 Cal. App. 3d 38, 147 Cal. Rptr. 565, 575 (1978).

Plaintiff has not identified which of the Defendants' specific alleged actions support a claim for intentional infliction of emotional distress, simply incorporating the same factual allegations pled as supporting her federal civil rights claims. [FAC ¶ 124, incorporating ¶¶ 1-95.] However, as with the civil rights claims, the state tort claim, as based on the same alleged actions, would have accrued more than two years before the filing of the present action, and would be time-barred unless subject to tolling.

As noted above, Plaintiff asserts that this claim too should be equitably tolled during the pendency of her administrative proceeding. However, applying the same test discussed above, Plaintiff's state tort claim would not qualify for such equitable tolling. First, the

24

HUD administrative complaint, naming only Defendant Barrera and HROA, gave no notice of any claim against Defendant Richey.  Second, the claim of housing discrimination in the administrative complaint, did not give the remaining Defendants notice of a claim of intentional infliction of emotional distress, which is both broader (being not limited to racial discrimination) and, in some respects, narrower (requiring "extreme and outrageous" conduct, the intent to cause emotional distress, and actually causing emotional distress).

Accordingly, even if Plaintiff's allegations could support a claim of intentional infliction of emotional distress against these defendants, such a claim is time-barred.  Therefore, Defendants' motion for summary judgment with respect to this state court claim should be granted.

## VI.   ORDERS

For the reasons discussed above, it is ordered as follow:

(1)  Defendants' motion for summary judgment (docket no. 41, filed July 9, 2010) is **GRANTED IN PART and DENIED IN PART**, as follows:

(2)  summary judgement is **GRANTED** with respect to Plaintiff's § 1983 claims and intentional infliction of emotional distress claims against all Defendants, and with respect to her § 1981 and § 1982 claims against Defendant Richey; and

(3)  summary judgment is **DENIED** with respect to Plaintiff's § 1981 and § 1982 claims against Defendants Barrera and HROA.

DATED:   June 25, 2012



CARLA M. WOEHRLE
United States Magistrate Judge